PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CYNTHIA JOHNSON (CABN 328932)
Special Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3693
    FAX: (510) 637-3724
    Cynthia.Johnson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ANTHONY DEXTER BROWN, JR.<br><br>    Defendant. | Case No.: 4:23CR00021-001 HSG<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>Date: May 28, 2025<br>Time: 2:00 PM |

## I. INTRODUCTION

Beginning in or about June 2020, Defendant Anthony Dexter Brown, Jr. conspired to defraud the California Employment Development Department ("EDD") of unemployment insurance benefits totaling more than $765,000. On October 24, 2023, Mr. Brown pleaded guilty to a single count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and over the government's objection, was referred to the Conviction Alternatives Program ("CAP"). Mr. Brown recently completed CAP. Given his participation in and successful completion of CAP, the government is recommending a sentence of time-served and three years of supervised release, as sufficient but not greater than necessary to meet the purposes of sentencing.

## II. BACKGROUND

### A. The Offense Conduct

Beginning no later than June 1, 2020 to on or about December 21, 2020, Mr. Brown conspired to defraud the California Employment Development Department ("EDD") of unemployment insurance ("UI") benefits. *See* Presentence Investigation Report ("PSR") ¶¶ 16-32. At the time he and his co-conspirators engaged in this scheme, EDD was dispensing UI benefits under the terms of the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act"). *Id*. The CARES Act provided beneficiaries who became unemployed through no fault of their own (and because of the restrictions imposed during the COVID-19 pandemic) an extra $600 per week than those beneficiaries would have normally received through each State's UI program. *Id*. EDD was the California State agency responsible for distributing UI benefits. *Id*.

Mr. Brown and his co-conspirators defrauded EDD by obtaining personally identifying information ("PII") that belonged to real third parties, such as names, Social Security Numbers, and dates of birth, and fraudulently used that information to apply for UI benefits. *Id*. Upon successfully submitting applications for UI benefits to EDD, Bank of America would send debit cards containing the benefits applied for to the address Mr. Brown submitted as part of his application for EDD benefits. *Id*. He used addresses other than his own on each of the applications he submitted and that others submitted on his behalf. *Id*. Once debit cards containing benefits applied for arrived at one of the addresses, Mr. Brown (or others) would obtain those cards and use them to begin unlawfully extracting cash. *Id*. Mr. Brown and his co-conspirators stole more than $765,000 in unemployment insurance benefits from EDD. *Id*.

### B. The Defendant's Criminal History

Mr. Brown has a criminal history that stretches back 25 years, including convictions for conspiracy to commit burglary, burglary, being a felon in possession of a firearm, possession of ammunition, multiple misdemeanors related to vehicle violations including DUIs and arrests related to carrying firearms. *See* PSR ¶¶ 49-67.

### C. The Defendant's Participation in CAP

On December 8, 2023, Mr. Brown entered residential drug treatment at the New Bridge Foundation and successfully completed their program on March 8, 2024. *See* PSR ¶¶ 7-9. Mr. Brown was given the

opportunity to participate in the Court's Conviction Alternatives Program (CAP) and began the program on January 22, 2024. *Id.* Despite some challenges (using alcohol, DUI arrest, and missing drug tests), Mr. Brown completed the program. *Id.* "According to U.S. Pretrial Services' records, the defendant has shown progress in CAP and has made significant strides tending to his recovery. He has addressed his addiction and has participated in programming." *See* PSR at p. 28.

### III.  SENTENCING GUIDELINES CALCULATION

The Guidelines offense level calculation for this case is as follows:

    a.  Base Offense Level:    7
        (U.S.S.G. §§ 2X1.1 + 2B1.1)

    b.  Specific Offense Characteristics
        (U.S.S.G § 2B1.1(b)(1) (loss amount of more than $550,000)  +14

    c.  Specific Offense Characteristics
        (U.S.S.G § 2B1.1(b)(11) (production of identification)  +2

    d.  Specific Offense Characteristics
        (U.S.S.G §2B1.1(b)(2)(A)(i) (10 or more victims)  +2

    e.  Acceptance of Responsibility  - 3

    f.  Adjusted Offense Level:  22

The Guidelines offense level calculation in the PSR matches the above calculation. PSR ¶ 48. Mr. Brown's Criminal History Category is IV, which results in a Guidelines range for his sentence of 63 to 78 months. PSR ¶ 94.

### IV.  SENTENCING RECOMMENDATION

    a.  **Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- the need for the sentence imposed to afford adequate deterrence to criminal conduct;
- the need for the sentence to protect the public from future crimes of the defendant;
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
- the need to provide restitution to any victims of the offense.

b.  **Recommended Sentence and Section 3553(a) Factors**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government recommends a downward variance to a sentence of time served and three years of supervised release. The variance is warranted based on Mr. Brown's successful completion of CAP as well as his efforts to maintain his sobriety and change his life for the better.

The nature and circumstances of Mr. Brown's offense are very serious. Moreover, he has a lengthy criminal history that includes convictions for firearms possession, conspiracy, burglary, and DUIs. Importantly, Mr. Brown has been on pretrial release for more than two and a half years, and despite some challenges has successfully participated in CAP. He has demonstrated acceptance of responsibility. He admitted the conduct, pleaded guilty and cooperated with Probation during the presentence interview. *Id*. at ¶¶ 34-35. Moreover, the PSR makes clear that Mr. Brown has had many struggles in his life, including exposure to violence at a young age as well as long-term substance abuse and mental health issues. *Id*. at ¶¶ 69-85. Notably, he is a father of two sons, ages 6 and 12, and maintains a positive relationship with them. *Id*. at ¶ 74. Balancing all these considerations, the Government believes a sentence of time served followed by three years of supervised release is reasonable and appropriate in this case, as it reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public. 18 U.S.C. § 3553(a)(2).

V.  **CONCLUSION**

For the foregoing reasons, the Government respectfully recommends that the Court impose a sentence of time served followed by 3 years of supervised release, subject to conditions proposed by U.S.

Probation. The defendant shall also pay a mandatory special assessment of $100 and forfeit the property identified in the Information and PSR.

Dated: May 15, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

　　　　　　　　/S/
CYNTHIA JOHNSON
Special Assistant United States Attorney